## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **RICHIE H. PATTON, SR.** and **MONICA J. PATTON**, individually and on behalf of all others similarly situated,<br>6336 Saint Johns Rd.<br>Lima, OH 45806 | Case No. |
| | Judge |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **JURY DEMAND ENDORSED HEREON** |
| v. | |
| **AMERIHOME MORTGAGE COMPANY, LLC d.b.a. AMERIHOME MORTGAGE**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| Defendant. | |

Plaintiffs Richie H. Patton, Sr., and Monica J. Patton, individually and on behalf of all others similarly situated, by and through counsel, file this action against Defendant AmeriHome Mortgage Company, LLC d.b.a. AmeriHome Mortgage and state as follows for their Class Action Complaint:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Richie H. Patton Sr. ("Mr. Patton") and Monica J. Patton ("Mrs. Patton") (collectively, "Plaintiffs") are each a natural person residing in Allen County, Ohio.

2.      Defendant AmeriHome Mortgage Company, LLC d.b.a. AmeriHome Mortgage ("Defendant" or "AmeriHome") is a foreign limited liability company incorporated under the laws

of the State of Michigan that maintains its headquarters and principal place of business at 1 Baxter Way, Suite 300, Thousand Oaks, CA 91362-3888.

3.      AmeriHome does business in the state of Ohio and is licensed to do business in the state of Ohio as a foreign limited liability company.

4.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the Ohio Residential Mortgage Licensing Act ("RMLA")— codified at R.C. 1322.01, *et seq*.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## STATEMENT OF FACTS

### *FHA Mortgages and the Regulations of the HUD Secretary*

7.      Every residential mortgage loan that is insured by the Federal Housing Administration ("FHA"), including Plaintiffs' loan with AmeriHome, contains substantially similar contractual provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD"). Specifically, those security instruments provide, with substantial uniformity, as follows:

(a)  Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

* * *

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*See*, copy of Plaintiffs' FHA-insured mortgage loan ("Plaintiffs' Mortgage"), attached as <u>Exhibit 1</u>.

8.      Pursuant to 12 U.S.C. § 1715u(a), the Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations.  That statutory provision reads:

Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

9.      The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as Plaintiff's Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

10.      The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, Revision No. 032719, March 14, 2016.

11.      The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook.  *See, e.g.,*

Plaintiffs' Mortgage, ¶ 9(d); SF Handbook at III.A.2.r.ii(C)(1)(a)-(b) (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

12.     Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a Borrower having to submit a complete loss mitigation application. *See*, *inter alia*, SF Handbook at III.A.2.o.

13.     One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

14.     There is no requirement in the SF Handbook for any of the COVID-19 Recovery Options that a borrower must submit a loss mitigation application in order for a mortgagee to review borrowers for such options.

15.     "The Mortgagee must review eligible Borrowers for the COVID-19 Recovery Options. Eligible Borrowers may receive more than one COVID-19 Recovery Option." *See*, SF Handbook at III.A.2.o.iii.(B)

16.     Mortgagees must review all borrowers for COVID-19 Recovery Options:

    (a)     If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

(b)     If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19.

*See*, SF Handbook at III.A.2.o.iii.(A)(1)-(2).

17.    Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not receive any incentive from HUD for offering and entering borrowers into COVID-19 Recovery Options. *See*, SF Handbook at III.A.2.o.iii.(A).

18.    In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" to reinstate their mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

19.    The ***only*** eligibility requirements for a Standalone Partial Claim are that the mortgagee must ensure that: (1) The borrower indicates they have the ability to resume making on-time mortgage payments; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(1)(a).

20.    If a borrower does not qualify for a "Standalone Partial Claim", however, "the Mortgagee *must review* the Borrower for the COVID-19 Recovery Modification" ("Recovery Modification"). *See*, SF Handbook at III.A.2.o.iii.(C)(2).

21.    The Recovery Modification is a 360-month Loan Modification, which must include a Partial Claim, if Partial Claim funds are available. The COVID-19 Recovery Modification targets a reduction in the P&I portion of the Borrower's monthly Mortgage Payment" aiming to achieve

a "25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment". *See*, SF Handbook at III.A.2.o.iii.(C)(2)(a).

22. The ***only*** eligibility requirements for a Recovery Modification are that the mortgagee must ensure that: (1) The borrower indicates they have the ability to make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

***Plaintiffs' and Class Members' Loans***

23. AmeriHome is the servicer of Plaintiffs' Loan and the Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively, the "loans").

24. Plaintiffs' Loan and the Class members' loans contain substantially similar language, as they were drafted using standardized templates, specifically, the model uniform instruments required by the FHA.

25. AmeriHome, is a mortgage servicer, as defined by R.C. 1322.01(BB), as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company."

26. AmeriHome, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

27.     AmeriHome is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.850198.000, RM.8850198.001-BR, and RM.850198.002-BR.

28.     Plaintiffs and Class members are "buyers" as defined by R.C. 1322.01(I), as they are individuals whose loans are serviced by a mortgage servicer, AmeriHome.

29.     When AmeriHome acquired the servicing rights to Plaintiffs' Loan and FDCPA Subclass (defined *infra*) members' loans, AmeriHome asserted that Plaintiffs and FDCPA Subclass members were in default of their obligations thereunder.

30.     AmeriHome is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts", and it regularly collects debts owed or due, or asserted to be owed or due, to another for which the primary purpose is for personal, family, or household use, including Plaintiffs' and FDCPA Subclass members' loans.

***AmeriHome's Improper Demand for Submission of  Loss Mitigation Applications for Review for COVID Recovery Options***

31.     Plaintiffs and each Class Member were impacted, directly or indirectly, by the Presidentially-Declared COVID-19 National Emergency, fell delinquent on their mortgages.

32.     Plaintiffs and each Class Member subsequently were either in a COVID-19 Forbearance or otherwise requested loss mitigation assistance from AmeriHome or were 90 days or more delinquent and affirmed to AmeriHome that they were negatively impacted by COVID-19.

33.     Per the SF Handbook, AmeriHome was required to review the Plaintiffs and each Class Member for eligibility for COVID-19 Recovery Options within 120 days of the end of the

COVID-19 Forbearance or the request for loss mitigation assistance. SF Handbook at III.A.2.o.iii.(B)(1)-(2).

34.    AmeriHome rather than review Plaintiffs and each Class member for a COVID Recovery Option, demanded that Plaintiffs and each Class member submit a complete loss mitigation application including a full review of their financial information.

35.    As discussed, *supra*, there is no requirement in the SF Handbook for any of the COVID-19 Recovery Options that a borrower must submit a loss mitigation application in order for a mortgagee to review borrowers for such options.

36.    AmeriHome's requirement of Plaintiffs and each Class member to submit a loss mitigation application to be considered for COVID Recovery Options was improper as no such requirement exists.

37.    AmeriHome's improper demand for Plaintiffs and each Class member to submit a loss mitigation application based upon false pretenses constitute a failure to act in compliance with the regulations of the HUD Secretary and evidence a lack of reasonable skill, care, and diligence, as well as a failure to act good faith and with fair dealing with respect to each of the loans.

38.    AmeriHome, in sending correspondence stating or otherwise communicating to Plaintiffs and each Class member that they were required to submit a loss mitigation application in order to be considered for COVID Recovery Options based upon false pretenses, engaged in conduct constituting dishonest dealings and misrepresentations.

39.    As COVID-19 Recovery Options are not incentivized as other loss mitigation options permitted by the regulations of the HUD Secretary, it is possible that AmeriHome is steering borrowers away from such options in order to obtain incentives for placing borrowers in other loss mitigation options.

40.     AmeriHome's conduct has caused Plaintiffs and Class members to suffer significant pecuniary and non-pecuniary damages.

41.     Plaintiffs and Class members were either discouraged from obtaining a COVID-19 Recovery Option or otherwise delayed in their efforts to obtain a COVID-19 Recovery Option due to gathering and submitting a "fully documented" loss mitigation application.

42.     Plaintiffs and Class members seeking to obtain COVID-19 Recovery Options loan, had to or will have to incur costs, expenses, and lost time in submitting loss mitigation applications that otherwise would not have been and should not have been necessary.

43.     Presuming Plaintiffs and Class members can subsequently obtain a COVID-19 Recovery Option, any loss mitigation option  is going to have much less favorable terms than the to which each was entitled. As interest rates have been steadily on the rise, roughly doubling, if not more, from this time last year, any delay in obtaining a Recovery Modifcation will almost certainly result in such having a higher rate for which Plaintiffs and Class Members will be responsible to pay. Moreover, any delay will result in further increased amounts for accrued interest, escrow advances, and other such items, to be capitalized onto the loans through these modifications and Plaintiffs and Class members will have to pay these amounts back with interest. These increased amounts for accrued interest, escrow advances, and other such items, would also be added to any applicable Standalone Partial Claim which resulting in a higher balance that Plaintiffs and Class members would be required to repay.

44.     Plaintiffs and Class members, if unable to submit a complete loss mitigation application, will not receive the benefit of the COVID-19 Recovery Options to which they are entitled and remain at risk of foreclosure and of the loss of their homes and are likely to incur costs

and legal fees to defend against foreclosure actions initiated in court and file for bankruptcy protection.

45.     Plaintiffs and Class members have further been caused to suffer severe emotional distress driven by AmeriHome's actions and by the tangible fear that AmeriHome's failure to properly review them for COVID-19 Recovery Options as required by the regulation of the HUD Secretary, would result in the loss of their homes to foreclosure sale.

## FACTS RELEVANT TO PLAINTIFFS

46.     On August 28, 2015, Mr. Patton executed a mortgage note payable to non-Party Union Home Mortgage Corporation in the amount of $130,001.00 ("Plaintiffs' Note") which was secured by a mortgage on Plaintiffs' principal place of residence which was executed by Plaintiffs ("Plaintiffs' Mortgage") (collectively, "Plaintiffs' Loan"). *See generally*, Exhibit 1; *see*, Plaintiffs' Note, ¶ 1; *see generally*, Plaintiffs' Mortgage.

47.     Plaintiffs fell upon financial hardships and defaulted on their obligations pursuant to Plaintiffs' Loan.

48.     Foreclosure proceedings were initiated against Plaintiffs on or about December 16, 2019, in the Cuyahoga Allen Court of Common Pleas, Case No. CV 2021 0342 (the "Foreclosure").

49.     Plaintiffs retained counsel to defend their interests in the Foreclosure.

50.     AmeriHome obtained servicing rights to Plaintiffs' Loan effective June 1, 2022. *See*, correspondence dated May 9, 2022, attached as **Exhibit 2**.

51.     At the time AmeriHome obtained servicing rights to Plaintiffs' Loan, AmeriHome claimed that the Loan was in default for the payment due and owing for September 1, 2019 and thereafter.

52.     On information and belief, AmeriHome is not the owner of Plaintiffs' Loan and services the Loan on behalf of a mortgage backed security of Ginnie Mae.

53.     Plaintiffs, like millions of others, were impacted by COVID-19.

54.     On August 11, 2022, Plaintiffs, through counsel, contacted AmeriHome via telephone to request loss mitigation options pursuant to the COVID-19 Recovery Options.

55.     On said telephone call with a representative identified as having identification number 7088, Plaintiffs provided all necessary information to be considered for COVID-19 Recovery Options, namely:

    (a) Plaintiffs were financially impacted by COVID-19;

    (b) Plaintiffs have recovered from Hardship;

    (c) Plaintiffs can resume making mortgage payments;

    (d) Plaintiffs reside in the Home as their primary residence; and,

    (e) Plaintiffs request to be reviewed for COVID-19 Recovery Options including a Recovery Modification.

56.     Despite such, both the representative identified as having identification number 7088 and a supervisor provided inaccurate information as the the COVID Recovery Options, namely:

    (a) In order to apply for or receive a modification, Plaintiffs would have ot contact Union Home Mortgage Corporation's attorney; and,

    (b) To be reviewed for COVID Recovery Options, including a Recovery Modification, Plaintiffs would have to submit a complete loss mitigation application.

57.     Plaintiffs thereafter attempted to dispute AmeriHome's assertions and have AmeriHome correct its erroneous conduct via written correspondence.

58.     On August 26, 2022 and December 12, 2022, AmeriHome sent written correspondence in response to such dispute through which AmeriHome apologized for "being unable to resolve this matter when [Plaintiffs] called on August 11, 2022" and for "provid[ing] inaccurate information when [Plaintiffs] contacted [AmeriHome]" but further continued to erroneously demand a full application and provided *further disinformation*, namely, that since "the loan was delinquent prior to [the] CARE Act, a complete Loss Mitigation Application is required to determine program eligibility based on investor guidelines today." Again, there is no requirement in the SF Handbook for any of the COVID-19 Recovery Options that a borrower must submit a loss mitigation application in order for a mortgagee to review borrowers for such options.

59.     To date, AmeriHome has refused to review Plaintiffs for eligibility for COVID-19 Recovery Options.

60.     Per the SF Handbook, AmeriHome was required to review Plaintiffs for COVID-19 Recovery Options, including a Recovery Modification. Had AmeriHome offered such a modification, Plaintiffs had the ability and desire to accept the same and fulfill their payment obligation thereunder which would have cured the default on Plaintiffs' Loan.

61.     Due to AmeriHome's conduct, Plaintiffs have not yet obtained a loan modification and remain at imminent risk of a foreclosure judgment and the sale of their home.

62.     AmeriHome's improper actions caused Plaintiffs to suffer from actual and proximate damages including, but not limited to:

(a) Legal fees, costs, and expenses to submit the submit written disputes in an attempt to have AmeriHome mitigate the harm caused to Plaintiffs to which they did not receive a proper response as it contained misinformation and misrepresentations and as the problem continues to persist;

(b) The lost opportunity to obtain a Recovery Modification at an interest rate of 5.22% the PMMS Rate for 30-year fixed rate conforming Mortgages (U.S. average) as of August 11, 2022, as such rate is now significantly higher;

(c) Legal fees, costs, and expenses related to the continued defense of the Foreclosure;

(d) Significant delay in the loss mitigation process and rehabilitation of their credit;

(e) Accrued interest, fees and charges imposed on the Loan including default servicing related fees since AmeriHome's refusal to review Plaintiffs for COVID-19 Recovery Options upon receipt of all necessary information on August 11, 2022, for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled; and,

(f) Severe emotional distress driven by AmeriHome's failure to properly handle their review of Plaintiffs' eligibility for a COVID-19 Recovery Options and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of the Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## CLASS ACTION ALLEGATIONS

63. **Class Definition**: Plaintiffs bring this action pursuant to Fed. Civ. R. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

All loan borrowers in the State of Ohio, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by AmeriHome, (4) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, and (5) who were unnecessarily required by AmeriHome to submit a complete loss mitigation application to AmeriHome in order to be considered for COVID-19 Recovery Options.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Late Fee Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

64.    **FDCPA Subclass Definition**: Plaintiff also brings this action pursuant to Ohio Civ. R. 23 on behalf of a subclass of similarly situated individuals and entities ("the FDCPA Subclass"), defined as follows:

All loan borrowers in the State of Ohio, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgages are insured by the FHA, (3) whose mortgage loans are serviced by AmeriHome, (4) whose mortgage loans were in default at the time AmeriHome obtained servicing rights to the same, (5) whose loans are not owned in whole or in part by AmeriHome, (6) who sought loss mitigation relief due to direct or indirect impact from the Presidentially-Declared COVID-19 National Emergency, and (7) who were unnecessarily required by AmeriHome to submit a complete loss mitigation application to AmeriHome in order to be considered for COVID-19 Recovery Options.

Excluded from the FDCPA Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FDCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

65.    **Numerosity and Ascertainability**: Upon information and belief, the Class and the FDCPA Subclass (collectively, the "Classes") are each comprised of more than forty (40) members, such that the Classes are so numerous that joinder of all members is impractical. This conclusion is reasonable because as the loss mitigation at issue centers around individuals impacted by the COVID-19 pandemic which affected nearly every family in the country, if not the

world, it is expected that a higher percentage of borrowers than would be typical are loss mitigation relief for their FHA Loans. The exact number of members in the Classes is presently unknown and can only be ascertained through discovery. Class members can easily be identified through Defendant's records or by other means.

66.  **Commonality and Predominance:** There are questions of law and fact common to the proposed Classes that predominate over any individual questions. Simply put, AmeriHome improperly required Plaintiffs and Class members to submit loss mitigation applications in order to be considered for COVID-19 Recovery Options and Plaintiffs and Class Members were harmed as a result. All members of the FDCPA Subclass have in common that their loans were in default at the time AmeriHome obtained servicing rights to the same. There are questions of law and fact common to the proposed Classes that predominate over any individual questions, including:

(a) Whether AmeriHome improperly required Plaintiffs and Class members to submit loss mitigation applications in order to be considered for COVID-19 Recovery Options;

(b) Whether AmeriHome misrepresented the eligibility requirements to be reviewed for COVID-19 Recovery Options in claiming that Plaintiffs and Class members needed to submit a complete loss mitigation application to be reviewed for the same;

(c) Whether Plaintiffs and Class members suffered actual damages, and the measure and amount of those damages; and,

(d) Whether Plaintiffs and Class members are entitled to recover statutory damages.

67.  **Typicality**: Plaintiffs' claims are typical of the claims of the Classes. On information and belief, Plaintiffs' and Class members' loans contain substantially similar

language, as they were drafted using standardized templates or uniform instruments common to all loans insured by the FHA, or contain substantially similar language to such documents. As such, Plaintiffs and Class members were subjected to and affected by a uniform course of conduct; specifically, AmeriHome's improper requirement for borrowers to submit a complete loss mitigation application in order to be considered for COVID-19 Recovery Options

68.     **Adequacy**: Plaintiffs will adequately represent the interests of the Classes and d0 not have adverse interests to the Classes. Plaintiffs' counsel has extensive experience litigating consumer class actions.

69.     **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual members of the Classes prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

**COUNT I:**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §§ 2201, *et seq.*)**
**(On behalf of Plaintiffs and the Class)**

70.     Plaintiffs repeat and reallege paragraphs 1 through 69 with the same force and effect as though fully set forth herein.

71.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

72.     Plaintiffs, individually, and on behalf of the Class, seek an order declaring that the regulations of the HUD Secretary do not require borrowers to submit a loss mitigation application to be considered for COVID-19 Recovery options.

73.     The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiffs and Class members contend that, pursuant to the regulations of the HUD Secretary, they should have been reviewed for COVID-19 Recovery Options upon their request for the same without submitting a complete loss mitigation application. In contrast, Defendant has repeatedly contended that it is prohibited from reviewing borrowers for COVID-19 Recovery Options without receiving and reviewing a complete loss mitigation application. Accordingly, this case will determine the legal scope of Defendant's obligations to Plaintiffs and Class members, as well as further individuals who may seek such loss mitigation relief moving forward.

74.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendant has refused and will continue to improperly refuse to evaluate borrowers for COVID-19 Recovery Modifications until borrowers submit a wholly unnecessary loss mitigation application when a timely and prompt review for COVID-19 Recovery Options may be the only way for a borrower to remain in their home after having been impacted by the COVID-19 pandemic.

75.     If the Court were to deny Plaintiffs' and Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to wrongfully refuse to evaluate borrowers for COVID-19 Recovery Options and make misrepresentations as to the same in the guise of justifying such improper conduct. As such, the resolution of this controversy is

contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiffs and the Class.

76.     Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiffs' and Class members' loans.

### COUNT TWO: VIOLATIONS OF THE RMLA (R.C. 1322.01, *et seq.*) (On behalf of Plaintiffs and the Class)

77.     Plaintiffs repeat and reallege paragraphs 1 through 69 with the same force and effect as though fully set forth herein.

78.     On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.* HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

79.     On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

80.     AmeriHome is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

81.     "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

82.     AmeriHome is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

83.     AmeriHome, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

84.     AmeriHome is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.850198.000, RM.8850198.001-BR, and RM.850198.002-BR.

85.     Plaintiffs and each Class member are "buyers" as defined by R.C.1322.01(I), as they are individuals whose loans are serviced by a mortgage servicer, AmeriHome

86.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

87.     AmeriHome violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by refusing to review Plaintiffs and Class members for COVID-19 Recovery Options, and by improperly claiming and misrepresenting that Plaintiffs and Class members are required to submit loss mitigation applications in order to be considered for the same.

88.     As a result of AmeriHome's conduct, AmeriHome is liable to Plaintiffs and Class members for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

89.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care,

and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

90.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

91.     AmeriHome violated R.C. 1322.45(A)(2) by failing to follow the Plaintiffs and Class members requests for COVID-19 Recovery Options,  refusing to review Plaintiffs and Class members for COVID-19 Recovery Options, and by improperly claiming and misrepresenting that Plaintiffs and Class members are required to submit loss mitigation applications in order to be considered for the same..

92.     AmeriHome violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing through its by refusing to review Plaintiffs and Class members for COVID-19 Recovery Options, and by improperly claiming and misrepresenting that Plaintiffs and Class members are required to submit loss mitigation applications in order to be considered for the same.

93.     As a result of AmeriHome's conduct, AmeriHome is liable to Plaintiffs and Class members for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

**COUNT THREE:**
**VIOLATION OF THE FDCPA**
**(15 U.S.C. §§ 1692e and 1692f)**
**(On behalf of Plaintiffs and the FDCPA Subclass)**

94.     Plaintiffs repeat and reallege paragraphs 1 through 69 with the same force and effect as though fully set forth herein.

95.     Plaintiffs and FDCPA Subclass members are each a "consumer" as they are each a natural person who is obligated or allegedly obligated to pay their loans. 15 U.S.C. § 1692a(3).

96.     The loans are each a "debt" as each is an obligation or alleged obligation of Plaintiffs' or FDCPA Subclass members to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of their homes. 15 U.S.C. § 1692a(5).

97.     AmeriHome is a "debt collector" because it regularly collects or attempts to collect on the loans owed to creditors, such as mortgage backed securities of Ginne Mae, the believed owner of Plaintiffs' Loan. 15 U.S.C. § 1692a(6).

98.     When AmeriHome acquired the servicing rights to Plaintiffs' loans and FDCPA Subclass members', such loans were in contractual default. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

99.     The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of:

(a) False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A));

(b) The threat to take any action that cannot legally be taken (15 U.S.C. § 1692e(5)); and,

(c) False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

100.    AmeriHome violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10), by refusing to review Plaintiffs and Class members for COVID-19 Recovery Options, and by improperly claiming and misrepresenting that Plaintiffs and Class members are required to submit loss mitigation applications in order to be considered for the same.n.

101.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

102.    AmeriHome violated 15 U.S.C. § 1692f through its actions in  refusing to review Plaintiffs and Class members for COVID-19 Recovery Options, and by improperly claiming and misrepresenting that Plaintiffs and Class members are required to submit loss mitigation applications in order to be considered for the same.

103.    AmeriHome's actions have caused Plaintiffs and FDCPA Subclass members to suffer actual damages, further described, *supra*.

104.    As a result of AmeriHome's actions, AmeriHome is liable to Plaintiff and FDCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Richie H. Patton, Sr., and Monica J. Patton, individually and on behalf of all others similarly situated, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and the FDCPA Subclass, each as defined, *supra*;

B.  Designating Plaintiffs as representative of the Class and the FDCPA Subclass, and their undersigned counsel as Class Counsel;

C.  Entering judgment in favor of Plaintiffs, the Class, and the FDCPA Subclass and against Defendant;

D.  Entering a declaratory judgment that the regulations of the HUD Secretary do not require that a borrower submit a loss mitigation application to a mortgagee in order to be reviewed for COVID-19 Recovery Options;

E.   Awarding Plaintiffs, the Class, and the FDCPA Subclass their actual damages;

F.   Awarding Plaintiff and the Class punitive damages as allowed under the RMLA;

G.   Awarding Plaintiffs and the FDCPA Subclass their statutory damages as allowed under
     the FDCPA;

H.   Awarding Plaintiff, the Class, and the FDCPA Subclass attorneys' fees and costs,
     including interest thereon, as allowed or required by law; and,

I.   Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Richie H. Patton, Sr., and
Monica J. Patton and the Putative Classes*

## JURY DEMAND

Plaintiffs Richie H. Patton, Sr., and Monica J. Patton, individually and on behalf of all others similarly situated hereby request a trial by jury on all issues.

/s/ Marc E. Dann

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
Dann Law
*Counsel for Plaintiffs Richie H. Patton, Sr., and Monica J. Patton and the Putative Classes*